COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present: Judges Petty, Beales and AtLee
Argued at Richmond, Virginia

LAMAR SHELTON BROWN

v.       Record No. 0184-17-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE RANDOLPH A. BEALES
MARCH 20, 2018

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

David Lassiter, Jr. for appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


On May 17, 2016, the circuit court convicted Lamar Shelton Brown ("appellant") of

possession of cocaine with intent to distribute in violation of Code § 18.2-248. On appeal,

appellant claims that the circuit court erred by not granting his motion to suppress evidence that

was found during a search of his home.[1] Appellant argues that the police lacked probable cause

to search his home because "Detective McKay's affidavit failed to provide a nexus between the

items sought . . . and Mr. Brown's residence." Appellant also argues that the circuit court erred

by upholding the search warrant through the good-faith exception to the exclusionary rule. For

---

[1] Appellant's single assignment of error challenges the circuit court's denial of his motion
to suppress and the sufficiency of the evidence in support of his conviction. Appellant's brief,
however, does not provide a standard of review or any legal argument on the question of the
sufficiency of the evidence. Consequently, appellant's claim that the evidence was insufficient
to convict him under Code § 18.2-248 is barred under Rule 5A:20. See Rule 5A:20; see also
Bartley v. Commonwealth, 67 Va. App. 740, 800 S.E.2d 199 (2017) (procedurally defaulting
appellant's assignment of error based upon appellant's failure to comply with Rule 5A:20(e)).
Therefore, in this opinion, we only address appellant's challenge to the denial of his motion to
suppress.

the reasons that follow, we find that the circuit court did not err in denying appellant's motion to suppress, and we affirm appellant's conviction.

## I. BACKGROUND

On November 10, 2015, Officer Jon McKay of the Jefferson Area Drug Enforcement (JADE) Task Force, an officer with more than twenty-five years of law enforcement experience (fourteen of those years being with JADE), prepared a sworn affidavit to obtain a search warrant for appellant's home.[2]  The magistrate issued the search warrant, and during the search of the home, police found two vacuum-sealed bags that contained a total of 394.55 grams of cocaine along with $4,551 in U.S. currency.

The affidavit stated that, on the same day Officer McKay obtained the search warrant for appellant's home, appellant was arrested for attempting to purchase more than five pounds of marijuana.  At the time of his arrest, appellant had more than $5,000 in U.S. currency on his person.  Officer Mark Frazier informed McKay that "a firearm was also recovered during [appellant's] arrest."  When he was arrested, appellant was the occupant of a GMC Envoy that was registered to his wife, who lived with appellant in the home.  Officer McKay's affidavit also stated that Officer Frazier had routinely observed the GMC Envoy parked outside of appellant's home along with other vehicles associated with appellant.[3]

---

[2] Regarding Officer McKay's training and experience, the affidavit stated, "Your affiant has made over 200 drug related arrests and has conducted over 200 drug related investigations. Your affiant has received specialized training related to drug enforcement from the Virginia Department of Criminal Justice, Commonwealth's Attorney Services Council and the U.S. Drug Enforcement Administration."

[3] Officer McKay's affidavit stated that appellant is the registered agent of a food truck business and that appellant listed his home's address on documents that were filed with the State Corporation Commission.  Also, Officer Frazier routinely observed the food truck parked outside of appellant's home.

The affidavit stated, "You[r] affiant [Officer McKay] believes that Lamar S. Brown's residence . . . is a base of operation for his illegal activities involving the distribution of marijuana and other illegal drugs." The affidavit also stated that on November 4, 2015, less than one week before appellant's arrest, "Mr. Brown reported an assault and attempted robbery at his residence."[4] McKay's affidavit elaborated that "subjects involved in the distribution of illegal drugs often accumulate large amounts of cash proceeds derived from those drug sales and are frequently the targets of robberies. Your affiant believes that Lamar Brown was the target of such a robbery at his residence on [November 4, 2015]."[5]

Officer McKay's affidavit also stated that a confidential informant identified as "Source A" informed the police that he or she "has observed Lamar Brown in possession of multiple pounds of marijuana and large amounts of U.S. Currency on more than 10 occasions in the last 45 days." Regarding the reliability of Source A, the affidavit stated, "Source A is known to your affiant and has provided information that has directly led to the seizure of money derived from the sale of illegal drugs." Source A also provided the police with information that "directly led to the arrest of a subject involved in the distribution of illegal drugs," and Source A had also provided information "that was against [the source's] penal interest."

---

[4] During oral argument, appellant's counsel argued that the November 4, 2015 assault and attempted robbery did not occur at appellant's residence, as the affidavit indicated, and that this fact did not establish a nexus with appellant's residence. Rather, appellant's counsel argued that the assault and attempted robbery occurred at appellant's food truck, which was parked near the residence. Contrary to counsel's statements at oral argument, appellant's opening brief stated, "Detective McKay attempted to use the fact that Mr. Brown was the victim of a crime – *a reported assault and attempted robbery at his residence on November 4, 2015* – to establish probable cause for a search warrant." (Emphasis added). In deciding this appeal, we need not resolve the apparent inconsistencies between these statements because our review of the motion to suppress must be based upon the facts that were presented in the search warrant's affidavit. See Adams v. Commonwealth, 275 Va. 260, 270, 657 S.E.2d 87, 93 (2008).

[5] McKay's affidavit also referenced another event that well preceded appellant's arrest. Specifically, back in September 2012, a bank teller reported to law enforcement that appellant deposited currency at a local credit union that "smelled strongly of marijuana."

Following a hearing on appellant's motion to suppress, the trial judge found that, "in this case while it is alleged that Mr. Brown was buying marijuana, the Court finds it --- it was of such an amount that there is a reasonable inference that it was for the purpose of distributing in the future." In stating her decision, the trial judge also considered facts related to the 2012 credit union incident and the fact that an informant, who was known to law enforcement, was "providing law enforcement information on what has happened in the past forty-five (45) days" regarding appellant's activities. The trial judge concluded that "when you put all of those factors together that there is indicia of probable cause underlying the search warrant so that . . . the good faith exception is applied."[6] Consequently, the circuit court denied appellant's motion to suppress.

---

[6] The circuit court denied appellant's motion to suppress without addressing the question of probable cause; rather, the circuit court upheld the search warrant under the good faith exception established in United States v. Leon, 468 U.S. 897 (1984). In Leon, the United States Supreme Court limited the application of the exclusionary rule to "a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule," 468 U.S. at 918, namely, where police misconduct would be deterred by the rule's application. The exclusionary rule should not be applied where police conduct was objectively reasonable and the officer executing a search warrant relied in good faith on the magistrate's or judge's probable cause determination. Id. at 922-23. However, despite a searching officer's objectively reasonable reliance on a search warrant, the good faith exception is not available in the following circumstances:

> (1) [W]here the magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit "so lacking in indicia of probable cause" as to render official belief in its existence unreasonable or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid.

Atkins v. Commonwealth, 9 Va. App. 462, 464, 389 S.E.2d 179, 180 (1990) (quoting Leon, 468 U.S. at 923). See also McCary v. Commonwealth, 228 Va. 219, 232, 321 S.E.2d 637, 644 (1984) (adopting Leon's good faith exception in the Commonwealth).

## II. ANALYSIS

### A. Standard of Review

A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact to an appellate court. Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002). When reviewing a denial of a motion to suppress evidence, an appellate court considers the evidence in the light most favorable to the Commonwealth as the party that prevailed in the trial court, and the appellate court accords the Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence. Gregory v. Commonwealth, 64 Va. App. 87, 93, 764 S.E.2d 732, 735 (2014). "In addition, 'the defendant has the burden of showing that even when the evidence is reviewed in that light, denying the motion to suppress was reversible error.'" Id. (quoting Branham v. Commonwealth, 283 Va. 273, 279, 720 S.E.2d 74, 77 (2012)); see also Lebedun v. Commonwealth, 27 Va. App. 697, 711, 501 S.E.2d 427, 434 (1998) ("[W]here the police conduct a search pursuant to a judicially sanctioned warrant, the defendant must rebut the presumption of validity by proving that the warrant is illegal or invalid."). Appellate courts are bound by the trial court's factual findings "unless those findings are 'plainly wrong or unsupported by the evidence.'" Ward v. Commonwealth, 273 Va. 211, 218, 639 S.E.2d 269, 272 (2007) (quoting Pyramid Dev., L.L.C. v. D & J Assocs., 262 Va. 750, 753, 553 S.E.2d 725, 727 (2001)). "However, the trial court's application of the law is reviewed *de novo*." Id.

## B. Probable Cause[7]

When reviewing a question of probable cause, appellate courts consider "only those sworn, written facts stated in the search warrant affidavit" as well as "information simultaneously presented to a magistrate by sworn oral testimony" or in "supplemental affidavits." Adams v. Commonwealth, 275 Va. 260, 270, 657 S.E.2d 87, 93 (2008). "In determining whether the affidavits are sufficient to support the search warrant, [appellate courts] must look to the totality of the circumstances." Derr v. Commonwealth, 242 Va. 413, 421, 410 S.E.2d 662, 666 (1991) (citing Illinois v. Gates, 462 U.S. 213, 230-31 (1983)). Viewing an affidavit's facts in their totality, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238; see Hicks v. Commonwealth, 281 Va. 353, 359, 706 S.E.2d 339, 342 (2011). The magistrate must base his determination of probable cause "upon objective facts and reasonable inferences drawn therefrom." Gwinn v. Commonwealth, 16 Va. App. 972, 975, 434 S.E.2d 901, 903 (1993). "And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." Gates, 462 U.S. at 238-39 (alterations in original) (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

---

[7] In deciding the matter before us, we address the Fourth Amendment question of whether the search warrant and its affidavit established probable cause to search appellant's residence. See Leon, 468 U.S. at 925 ("If the resolution of a particular Fourth Amendment question is necessary to guide future action by law enforcement officers and magistrates, nothing will prevent reviewing courts from deciding that question before turning to the good-faith issue."); see also Anzualda v. Commonwealth, 44 Va. App. 764, 774 n.3, 607 S.E.2d 749, 754 n.3 (2005) (en banc) ("[C]ourts both within this Commonwealth and elsewhere will frequently bypass the issue of probable cause and proceed directly to the question of whether the good faith exception applies. However, we also believe that consistently sidestepping the issue of probable cause in favor of applying the good faith exception will inevitably permit the exception to swallow the rule.").

In Gwinn v. Commonwealth, we stated, "A magistrate is entitled to draw reasonable inferences about where incriminating evidence is likely to be found, based on the nature of the evidence and the type of offense." 16 Va. App. at 975, 434 S.E.2d at 904.[8] One such reasonable inference is that "[i]n the case of drug dealers, evidence of that on-going criminal activity [drug dealing] is likely to be found where the dealer resides." Id. at 976, 434 S.E.2d at 904. This Court in Gwinn also stated that an affidavit does not need to conclusively show that the evidence sought by law enforcement will be found in the location to be searched. We said:

> The magistrate need not determine that the evidence sought is, in fact, on the premises to be searched or that the evidence is more likely than not to be found where the search is to take place. The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.

Id. at 975, 434 S.E.2d at 903 (internal citations omitted); see also Derr, 242 Va. at 421, 410 S.E.2d at 666 (stating that the United States Supreme Court in Illinois v. Gates rejected "hypertechnical, rigid, and legalistic analysis of probable cause determinations"). Thus, this Court has established that a magistrate can reasonably infer, based upon facts indicative of the distribution of illegal drugs, that evidence of such drug dealing may be found in a defendant's home. See Gwinn, 16 Va. App. at 976, 434 S.E.2d at 904.

---

[8] Like this Court's decision in Gwinn, federal appellate courts and other state appellate courts have upheld search warrants where a magistrate made reasonable inferences about where incriminating evidence may be found, based upon the nature of the evidence and the type of offense. See, e.g., United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986) ("In the case of drug dealers, evidence is likely to be found where the dealers live."); see also United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988) ("It was reasonable for the magistrate to believe that the defendant's gun and the silencer would be found in his residence. Therefore, *even though the affidavit contained no facts that the weapons were located in defendant's trailer*, we reject his argument that the warrant was defective." (emphasis added)), cert. denied, 488 U.S. 1031 (1989); State v. Yarbrough, 841 N.W.2d 619, 624 (Minn. 2014) (holding that the affidavit established a nexus between the gun and drugs found in the residence because the defendant was a "drug wholesaler" who made threats with a gun and fled in the direction of the residence in a vehicle that was parked at and registered to the residence).

### C. McKay's Affidavit Provided a Substantial Basis for Probable Cause

Viewing the facts in the light most favorable to the Commonwealth, as we must because the Commonwealth prevailed in the trial court, the facts alleged in the affidavit support the reasonable inference that appellant was engaged in the ongoing distribution of illegal drugs. Applying the law to these facts, the magistrate here had a substantial basis to find probable cause existed to issue a search warrant for appellant's home. See Gwinn, 16 Va. App. at 975-76, 434 S.E.2d at 904.

Officer McKay – who has investigated more than 200 drug cases and has received a great deal of specialized training in drug enforcement – stated in his affidavit that appellant was arrested while attempting to purchase more than five pounds of marijuana. A magistrate could reasonably infer that such an amount was inconsistent with personal use, and, in fact, the trial judge explicitly found that such an inference was reasonable. Also, appellant was in possession of more than $5,000 in U.S. currency at the time of his arrest, and law enforcement personnel also recovered a firearm during the arrest. See Logan v. Commonwealth, 19 Va. App. 437, 445, 452 S.E.2d 364, 369 (1994) (*en banc*) ("The relationship between the distribution of controlled substances . . . and the possession and use of dangerous weapons is now well recognized.").

The affidavit also established that, in 2012, appellant had deposited at a credit union currency that "smelled strongly of marijuana." See Pierceall v. Commonwealth, 218 Va. 1016, 1021, 243 S.E.2d 222, 225 (1978) ("[C]ircumstances occurring substantially before the issuance of a search warrant can justify the issuance of the warrant only if such past circumstances disclose 'a probable cause' of continuous nature so as to support a rational conclusion that the past probable cause is still operative at the time of the issuance of the warrant." (citing Sgro v. United States, 287 U.S. 206, 210-11 (1932))). Furthermore, appellant was the target of an attempted robbery at his home only six days before his arrest, and Officer McKay indicated that

drug dealers' homes are frequently the targets of robberies because of the possibility that they contain substantial amounts of cash and drugs. See Gates, 462 U.S. at 231-32 (describing the probable cause standard as not dealing with "hard certainties, but with probabilities . . . . [T]he evidence thus collected must be seen and weighed not in terms of library analysis by scholars, *but as understood by those versed in the field of law enforcement*." (emphasis added) (quoting United States v. Cortez, 449 U.S. 411, 418 (1981))). Perhaps most significant, the affidavit stated that Source A – a confidential informant with established reliability – who was known by Officer McKay, informed police that he or she had observed appellant with "multiple pounds of marijuana and large amounts of U.S. Currency on more than 10 occasions" in the forty-five days that preceded appellant's arrest. See Byrd v. Commonwealth, 57 Va. App. 589, 600, 704 S.E.2d 597, 602 (2011) (*en banc*) (explaining that an informant's reliability is sufficiently established by providing accurate information on prior occasions).

In his brief, appellant argues that the "warrant was not supported by probable cause" because McKay's affidavit did not establish a nexus between the items seized and appellant's home. Appellant argues that McKay's affidavit failed to provide "*direct evidence* linking any alleged drug activity or distribution" to the home. (Emphasis added). Appellant's brief also stated, "Detective McKay did not, and could not, show that Source A saw Mr. Brown at any point with such cash or drugs at his residence."

Effectively, appellant's brief argues that Officer McKay was required to meet a legal standard *greater than* probable cause to obtain a search warrant for the home. To the contrary, Officer McKay was not required to definitively prove that evidence would be found in the home. See State v. Yarbrough, 841 N.W.2d 619, 622 (Minn. 2014) ("[D]irect observation of evidence of a crime at the place to be searched is not required."); see also Gates, 462 U.S. at 246 ("[P]robable cause does not demand the certainty we associate with formal trials."). Rather,

McKay's affidavit only needed to state objective facts that would enable a magistrate to find that a "fair probability" existed that evidence of drug distribution would be found in the home. Gates, 462 U.S. at 238. We find that Officer McKay's affidavit was sufficient to meet this standard and that the issuing magistrate had a substantial basis to conclude that probable cause existed to search appellant's home.

## III. CONCLUSION

In summary, taking all of the objective facts in the affidavit and viewing them in their totality – each mounting upon the other – the reviewing magistrate could reasonably infer that appellant was engaged in the distribution of illegal drugs. Consequently, there was a reasonable probability that evidence of that crime could be found in appellant's home. Therefore, we find that there was a substantial basis for the magistrate to conclude that probable cause existed that criminal activity was occurring so as to justify issuing the search warrant for appellant's home. Furthermore, having found that probable cause existed under the Fourth Amendment to issue the search warrant, we need not address the good faith exception under Leon because that exception to the exclusionary rule is not required, of course, where probable cause of criminal activity actually exists. Therefore, we conclude, albeit for a different reason, that the circuit court did not err in denying appellant's motion to suppress. Consequently, for these reasons, we affirm appellant's conviction.

Affirmed.